| | |
|---|---|
| ERNEST WILLIAMS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )    Case number 4:06cv1069 TCM |
| | ) |
| STEVE LARKINS, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

The 28 U.S.C. § 2254 petition of Ernest Williams ("Petitioner"), a Missouri prisoner serving a term of fifteen years imprisonment, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for review and final disposition.[1]

### Background

Petitioner and a co-defendant, Emanuel Anderson, were originally charged by indictment with one count of first degree robbery in violation of Missouri Revised Statutes § 569.020.[2] (Resp't Ex. A at 9.) By an amended information Petitioner was charged, as a

---

[1]  This matter is before the undersigned United States Magistrate Judge on consent of the parties.  28 U.S.C. § 636(c).

[2]  Missouri Revised Statutes § 569.020 states that

[a] person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime, (1) Causes serious physical injury to any person; or (2) Is armed with a deadly weapon; or (3) Uses or threatens the immediate use of a dangerous instrument against any person; or (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous

prior offender under Missouri Revised Statutes § 558.016, with first degree robbery in violation of Missouri Revised Statutes § 569.020. (Id. at 18-19.) Specifically, by the amended information, Petitioner and Anderson were charged with forcibly stealing money owned by Carla White, on March 14, 2000, through the display and threatened use of what appeared to be a deadly weapon. (Id. at 18.)

The trial court declared a mistrial during the first jury trial. (See id. at 23.) At the second trial, the jury found Petitioner guilty of first degree robbery. (Id. at 49.)

During the second trial, the State presented the testimony of White; Linda Hinton,[3] the medical records librarian at what will be referred to as Alexian Brothers Hospital; Vernon Taylor, the Police Officer for the City of St. Louis Police Department who responded to the call that a robbery had occurred and interviewed White shortly after the robbery (Officer Taylor); Paul Buck, the Police Officer for the City of St. Louis Police Department who, later the day of the robbery, stopped a vehicle fitting the description of the vehicle involved in the robbery (Officer Buck); Darrell Holmes, a Detective for the City of St. Louis Police Department who investigated the robbery, including searching the vehicle, interviewing

instrument.

Mo. Rev. Stat. § 569.020.1. First degree robbery is a class A felony. Mo. Rev. Stat. § 569.020.2.

[3] Hinton testified to the March 14, 2000, examination and treatment of White as reported in the records of Alexian Brothers Hospital (Resp't Ex. B at 261-63) and, on cross-examination, said she assumed, based on a notation in White's hospital record for March 14, 2000, that White's medical doctor had prescribed Prozac for White. (Id. at 265.)

Anderson and Patricia Meanus,[4] and presenting to White a photo array and lineup involving Petitioner (Detective Holmes); and, in rebuttal, the testimony of White, Detective Holmes, and Peter Rohrich, an Assistant Circuit Attorney for the City of St. Louis, who was involved in Anderson's guilty plea on the robbery charge arising out of the incident with White. (Resp't Ex. B at 186-311 and 405-44.)  Petitioner presented the testimony of Anderson, Kennon Boyd, and Nakia Williams (Nakia).[5]  (Id. at 311-404.)  Petitioner did not testify.

White testified that, during the early morning hours of March 14, 2000, she was driving home after spending the evening at her sister's home where they had shared a six-pack of beer.  (Id. at 187, 191, 239-40.)  She decided she "shouldn't be driving" and pulled over to call a friend on a pay telephone in the City of St. Louis.  (Id. at 192, 187, 219. 241.)  While White was trying to make the call, Anderson approached her, placed an object, which White thought was a gun, in White's back, and asked where "the money" was.  (Id. at 193-94, 204, 242-43.)  Then Petitioner approached, and shouted "Tell him where the money's at."  (Id. at 196, 244.)  Anderson reached in White's back pocket, removed money, and ran away.  (Id. at 196, 244, 246.)  In the meantime, Petitioner reached into White's car, took White's purse, and ran off.  (Id. 196, 244, 246.)  White watched them and saw Anderson get in the driver's

---

[4] This person's last name is spelled different ways throughout the record.  The Court will spell it "Meanus," the way it was spelled in the transcript of the evidentiary hearing at which she testified. (See Resp't Ex. H.)

[5] To avoid confusion between Petitioner, Ernest Williams, and this witness, Nakia Williams, the Court will refer to Ms. Williams as Nakia.  The Court intends no disrespect by referring to this witness by her first name.

side of a car she described as having a license plate number 414-JEE. (Id. at 198-200.) As Anderson was getting in, she ran to the car and reached in from the driver's side to get her purse from Petitioner, who was sitting on the passenger side with the purse on his thigh. (Id. at 201-02; 228.) Petitioner punched her a few times, cursed, and yelled at her to get out of the car. (Id. at 202, 230.) At the time Petitioner was hitting White, the driver's side car door was open, the car dome light was on, and his face was approximately one or two feet away from her. (Id.) White lost her glasses during the struggle with Petitioner, and got out of the car. (Id. at 202-03, 232-33.) After the car left, White returned to the pay phone and called the police with change that had not been taken from her. (Id. at 203-04.) White characterized the area where the robbery took place as well lit, mentioning a light on top of the telephone, a street light on the same side of the street as the pay phone, and a street light on the opposite side of the street. (Id. at 187-88, 195, 204, 222, 259.)

When the police arrived, White gave them a description of the men involved in the robbery. (Id. at 205.) She described Petitioner as one of two black men in their late teens or early twenties, having a "medium build," being about five foot nine inches tall, weighing 150 pounds, and having "low hair." (Id. at 206, 222-24, 238, 260.) She also gave the officers an account of how she was robbed and of the property that was taken. (Id. at 207.)

She then went home and later that day went to Alexian Brothers Hospital. (Id. at 207-08.)

At some point that day, she viewed a lineup, during which she immediately recognized Anderson; and she received her eyeglasses. (Id. at 212-14, 248-49.)

Some time later, the police presented an array of Department of Revenue photos to White, who immediately selected Petitioner's photograph as a picture of a person involved in the robbery. (Id. at 215-16, 225-26, 235-36, 251.) The police subsequently provided a lineup during which White identified Petitioner. (Id. at 216-18, 226.)

When she was shown a picture of Boyd during trial, White testified she had never seen that person before; that person had not been at the March 14, 2000, robbery; and she had not seen that person on the night of the robbery. (Id. at 218-19.) In rebuttal, after Boyd had testified, White also testified that, having seen him during his testimony, he was not the man who had approached her, was not the man who took her purse, was not the man who later punched her in the car, and was not at the robbery on March 14, 2000. (Id. at 406-07.)

Officer Taylor testified that, when he arrived at the scene, White gave him a description of the two men who robbed her, including a description of Petitioner as being about twenty years old, weighing 150 pounds, being five feet nine inches tall, having a gold tooth and moustache, having a short "Afro natural," and wearing a white t-shirt and black jeans. (Id. at 267-69.) Officer Taylor also testified that White gave him the number of the license plate of the car the two men got into as "414-JEE, Missouri 2000," and that the license plate number was dispatched. (Id. at 269-70.) During cross-examination, Officer Taylor acknowledged his police report stated additionally that Petitioner's race was black, his

complexion was dark, his eye color was brown, and his hair color was black. (<u>Id.</u> at 273.) Based on his police report, Officer Taylor also noted that White did not mention Petitioner had braids in his hair. (<u>Id.</u> at 275.)

Officer Buck testified that, while he was patrolling the streets during the afternoon of March 14, 2000, he saw and stopped a car having the Missouri 414-JEE license plate. (<u>Id.</u> at 272-78.) The occupants included Anderson, who was driving, and Meanus, but not Petitioner. (<u>Id.</u> at 278, 281, 315.) Officer Buck saw eyeglasses in the car; and learned the car belonged to Meanus, although Anderson was driving it. (<u>Id.</u> at 278.) Detective Holmes and another detective arrived and conducted further investigation of the robbery. (<u>Id.</u> at 280.)

Detective Holmes confirmed that the car's license plate number was 414-JEE and testified that he searched the vehicle, finding a pair of eyeglasses in it. (<u>Id.</u> at 285.) Detective Holmes then took Anderson to the police station and conducted a lineup, including Anderson, who matched a description of one of the individuals involved in the robbery of White. (<u>Id.</u> at 286.) A picture was taken of the lineup and taken to White, who positively identified Anderson. (<u>Id.</u> at 286-87.) Detective Holmes then determined that the car belonged to Meanus, and began investigating the identity of the second man involved in the robbery. (<u>Id.</u> at 287.) After speaking to Meanus and Anderson, Detective Holmes got Department of Revenue driver's license photographs of Petitioner and of others "very similar in likeness to" Petitioner, and showed them to White, who positively identified Petitioner. (<u>Id.</u> at 288-90,

6

295-96.) In displaying the group of photographs to White, Detective Holmes folded over the identifying information on the photographs, did not point out Petitioner's photograph, did not in any way suggest which one to select, and left the choice up to White. (<u>Id.</u> at 290-91, 293-95.) Petitioner was arrested on April 14, 2000, and placed in a lineup, in which White identified Petitioner. (<u>Id.</u> at 302, 291.) During this lineup, Petitioner had braids in his hair. (<u>Id.</u> at 300.)

Anderson testified that he approached White early in the morning of March 14, 2000; told her not to "turn around . . . it's a robbery"; and "[r]eached in her back pocket [and] grabbed some money out of [that] pocket." (<u>Id.</u> at 312-13; 335.) Anderson further stated that Kennon Boyd was with him and "got her purse"; then the two of them went in different directions and met back at their car. (<u>Id.</u> at 313.) When Anderson got to the car, Boyd was already in the car, and White was across the street and "tried to dive in the car to recover her purse," but Anderson pushed her out of the car. (<u>Id.</u> at 313-14.) Anderson described Boyd as about "five-six [or] five-seven" tall, weighing about 150 pounds, and having a dark brown complexion, one gold tooth, and "real short" hair. (<u>Id.</u> at 315.) When he was questioned by the police the afternoon of March 14, 2000, Anderson testified, he told them Boyd was with him, and he didn't know Boyd's last name but Boyd "used to go with [Anderson's] cousin," Nakia. (<u>Id.</u> at 316-17.) Anderson testified that Boyd is the father of Nakia's first child, and Petitioner is Nakia's boyfriend and the father of other children of Nakia. (<u>Id.</u> at 328.)

Boyd described himself as five feet six inches tall, weighing 140 pounds, having a short or "low to [his] head" hairstyle, having a "dark, medium" complexion, having one gold tooth, having had a moustache, and owning a pair of black jeans and a white t-shirt. (<u>Id.</u> at 353-54.) Boyd testified he was not with Anderson during the robbery on March 14, 2000, and his voice was not on the tape recording of a conversation between a man and Nakia. (<u>Id.</u> at 356, 363, 364, 365.)

Nakia testified that Petitioner was her boyfriend and the father of two of her children, and that Boyd was the father of another of her children. (<u>Id.</u> at 370.) On April 18, 2000, after Petitioner's arrest, she had a conversation with Boyd, which she recorded. (<u>Id.</u> at 378-79.) She testified that the recorded conversation was about the robbery that he and Anderson committed. (<u>Id.</u> at 389-90.) Nakia also testified that Petitioner was at home with her at the time of the charged robbery. (<u>Id.</u> at 343-75, 392-93.)

Rohrich testified that he was the Assistant Circuit Attorney present during Anderson's guilty plea proceeding when Anderson agreed to the facts of the March 14, 2000, robbery of White, including that Petitioner was with him. (<u>Id.</u> at 426-28.) Rohrich also testified that, during that guilty plea proceeding, Anderson did not mention that it was Boyd, rather than Petitioner, who was present at the robbery of White on March 14, 2000. (<u>Id.</u> at 427-28.)

The trial court allowed all of State's exhibits, except the photograph of Boyd and the Alexian Brothers Hospital records, to be passed to the jury (<u>id.</u> at 304), allowed the tape recording to be played for the jury (<u>id.</u> at 390), and denied Petitioner's motions for judgment

of acquittal made at the close of the State's evidence and at the close of all the evidence (id. at 309, 445).

During the prosecutor's rebuttal closing argument regarding the tape recording the following exchange took place:

> [Prosecutor:] [T]he cops never got the tape.  If this is valid evidence, if this is truthful evidence, if this is evidence to be believed, then it should have been turned over to the police.  He wouldn't be waiting all this time for this trial. We could have cleared this up from the get-go.  It wasn't.
>
> This is manufactured evidence.  It's suspect evidence.  It was created for one purpose, to create in your minds a so-called reasonable doubt. You know, it's an old principle of propaganda, you say the same lie over and over again, people tend to believe it.  They did it in Germany.
>
> [Petitioner's Attorney:]  Your Honor, I'm going to object.  This is improper argument.
>
> THE COURT:  Let's leave Germany out of it[.]
>
> [Prosecutor:] By saying reasonable doubt over and over, they're hoping you might say, yeah, that might be a reasonable doubt, that might be a reasonable doubt.  Don't buy that.

(Id. at 470-71.)

The jury subsequently found Petitioner guilty of first degree robbery.  (Resp't Ex. A. at 49).  Prior to sentencing, Petitioner filed a motion for judgment of acquittal or in the alternative for a new trial (motion for new trial).  (Id. at 50-52.)  In this motion for new trial, Petitioner, in relevant part, argued the trial court erred in allowing the State to make an improper closing argument in violation of Petitioner's federal due process rights (id. at 51);

the trial court erred in denying the motion for judgment of acquittal at the close of all the evidence in that the State failed to offer a submissible case in violation of Petitioner's federal due process rights (id. at 51-52); and the trial court erred in allowing the identification of the Petitioner by the victim in violation of Petitioner's Fifth, Sixth, and Fourteenth amendment rights (id. at 52). The trial court denied Petitioner's motion for new trial (id. at 53; Resp't Ex. C at 2), and sentenced Petitioner to a fifteen year term of imprisonment (Resp't Ex. A at 54-56).

On direct appeal, Petitioner first argued the trial court violated his federal constitutional rights to a fair trial, due process, and equal protection by failing to sustain defense counsel's objection to, and failing to instruct the jury to disregard, the prosecutor's statement during his rebuttal closing argument "which referred to defense counsel's closing argument as a lie and Nazi propaganda." (Resp't Ex. D at 9, 11.) In his second point on appeal, Petitioner argued there was insufficient evidence on which a reasonable juror could find Petitioner guilty beyond a reasonable doubt on the first degree robbery charge. (Id. at 10, 14.)

The appellate court affirmed Petitioner's conviction and sentence in a two paragraph order. (Resp't Ex. F.) The mandate issued on December 9, 2003. (See Resp't Ex. G at 24, 64.)

Petitioner timely filed a pro se motion for post-conviction relief.[6]  In the motion, Petitioner claimed that his trial counsel provided ineffective assistance, that his conviction was supported by evidence obtained pursuant to an unlawful arrest, and that Petitioner was prevented by counsel from testifying at trial.  (Id. at 12.)  The ineffective assistance of trial counsel claim was based on Plaintiff's argument his trial attorney did not spend enough time with him going over the case prior to trial; failed to object to arguments and evidence presented by the prosecutor during trial; failed to conduct an interview of a key witness, Meanus, and present her as a witness at trial; and prevented Petitioner from testifying to show that he did not commit the robbery.  (Id. at 13.)  For his second claim, Petitioner argued the police were looking for a suspect whose description did not match a description of him, therefore he was unlawfully arrested.  (Id.)  For his third claim, Petitioner argued he could have testified to show that Anderson and Boyd committed the charged robbery, not Petitioner. (Id. at 14.)

Through counsel, Petitioner subsequently filed, after being granted an extension, a timely amended motion for post-conviction relief pursuant to Missouri Supreme Court Rule

---

[6]  In March 2002, Petitioner filed a pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15 (Resp't Ex. G at 3-9), which was "stayed pending disposition of direct appeal" (id. at 10).  In January 2004, after resolution of the direct appeal, Petitioner timely filed a pro se motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  (Id. at 11-17.)  These pro se motions presented the same claims for relief.  The Court will refer only to the second  pro se  motion as the pro se motion for post-conviction relief.

29.15 raising an ineffective assistance of trial counsel claim.[7]  (Id. at 23-40.)  Petitioner first alleged he was denied his rights to due process and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in that Petitioner's trial counsel failed to allow Petitioner to testify despite Petitioner's desire to do so.  (Id. at 25-31.) Petitioner also alleged he was denied his rights to due process and the effective assistance of trial counsel under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution in that his trial attorney failed to call Meanus, a material witness, to testify.  (Id. at 31-38.) Specifically, Petitioner argued that Meanus, whose car was used in the robbery, told him that Boyd committed the robbery with Anderson and she had seen Boyd in the car with Anderson the night of the robbery.  (Id. at 34, 36.)  The amended petition included a request for an evidentiary hearing.  (Id. at 39.)

---

[7]  Upon the filing of the timely amended post-conviction motion, any claims in the pro se motion for post-conviction relief were no longer before the motion court except to the extent they were included in the amended motion.  See **Tinsley v. State**, 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only claim which the motion court could have considered and determined was that raised in the amended Rule 29.15 motion for post-conviction relief [because t]he filing of an amended motion superseded [the] pro se motion and rendered it a nullity" (citations omitted)); **Day v. State**, 143 S.W.3d 690, 693 (Mo. Ct. App. 2004) ("The amended motion supersedes [the] pro se motion and renders it a nullity. . . . .  Therefore, the allegations of a timely-filed amended motion would be the only matters before the motion court" (citation omitted)); **Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (a pro se allegation not included in the amended motion for post-conviction relief is "not properly before the motion court").

The motion court[8] conducted an evidentiary hearing. (See id. at 41; Resp't Ex. H.) During this hearing the motion court heard the testimony of Meanus; Petitioner's trial attorney, Phillip Eisenhauer; and Petitioner.[9] (Resp't Ex. H.)

The motion court denied the motion upon concluding that Petitioner's trial attorney was not ineffective. (Resp't Ex. G at 62-71.) With respect to the claim that counsel was ineffective for failing to allow Petitioner to testify, the motion court found that Petitioner's testimony regarding his desire to testify at trial was "not credible," accepted Petitioner's trial attorney's unequivocal testimony about his usual practice in addressing a client's right to testify during trial, and concluded Petitioner was advised of his right to testify and acquiesced in his trial counsel's advice not to testify. (Id. at 66-67.) Specifically, the motion court stated that

> [Petitioner's trial attorney]'s recommendation to [Petitioner] not to testify was reasonable trial strategy that [Petitioner] accepted. [Petitioner] in fact knew of his right to testify, but acquiesced in [his trial attorney]'s advice that his testimony could harm his case because of his prior conviction. [Petitioner] failed to establish by a preponderance of the evidence that [Petitioner's trial attorney] refused to allow him to testify.

(Id. at 69.)

For Petitioner's second claim, the motion court found Meanus' testimony that Boyd was present in her car prior to the offense "not credible"; observed that "Meanus was unable to testify

---

[8] The same judge presided over the motion court proceedings who had presided over the trial court proceedings.

[9] Petitioner had stated during his sentencing that he "wanted to get on the stand. I asked my lawyer to allow me to get on the stand. I just wanted to tell my part of what happened to me." (Resp't Ex. C at 7.)

as to who actually accompanied . . . Anderson at the time of the robbery"; noted "[h]er credibility as a trial witness . . . is . . . called into question by the fact that she had an ongoing relationship with [Anderson] at the time of the crime in question"; and found that her testimony that the "E" mentioned in her statement to the police referred to Petitioner "would have done damage to the defense case." (Id. at 65, 66.)  The motion court concluded Petitioner's trial counsel's failure to pursue the testimony of Meanus was objectively reasonable (id. at 69) in that her testimony could have harmed the defense; due to the known impeaching evidence; and due to the availability of other, stronger evidence of the complicity of Boyd in the crime, such as Anderson's testimony and the tape recorded conversation.  (Id. at 70.)  In summary, the motion court characterized Meanus' testimony as "at best provid[ing] marginal circumstantial support to the defense theory, and, at worst, implicat[ing Petitioner] by the reference to 'E.'" (Id.)  The motion court also noted that Petitioner had not proved that Meanus was in fact discoverable to defense counsel through reasonable investigation because she testified she had moved from the address in the police report and there was no evidence that Petitioner or Petitioner's counsel knew her location at the time of trial.  (Id.)  In sum, the motion court concluded

> [Petitioner] received effective assistance of counsel at trial.  He was not denied his right to testify.  His attorney's conduct, including the decision not to pursue the testimony of . . . Meanus, was within the wide range of reasonable professional assistance.  On this record, there is no reasonable probability that the result of the trial would have been different, but for any errors of counsel.

(Id. at 70-71.)

Petitioner appealed arguing first that the motion court clearly erred in denying his post-conviction motion after an evidentiary hearing because Petitioner showed he was denied his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution to testify, due process, and the effective assistance of trial counsel in that Petitioner's trial counsel refused to let him testify at trial. (Resp't Ex. I at 19, 21.) For his second point on appeal, Petitioner argued the motion court clearly erred in denying his post-conviction motion after an evidentiary hearing because Petitioner showed he was denied his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution to due process, to present a defense, to a fair trial, and to the effective assistance of counsel in that trial counsel failed to investigate Meanus and to call her as a witness at trial. (Id. at 20, 29.)

The Missouri Court of Appeals affirmed the motion court's decision in a summary order accompanied by an unpublished memorandum opinion. (Resp't Ex. K.) In relevant part, the appellate court cited **Strickland v. Washington**, 466 U.S. 668 (1984), when discussing what was necessary to prevail on an ineffective assistance of counsel claim. (Resp't Ex. K, Mem. at 2.) In concluding the motion court properly denied Petitioner's claim his trial attorney was ineffective in failing to present Petitioner as a witness at trial, the appellate court deferred to the motion court's determinations that trial counsel's testimony was credible and Petitioner's testimony was not credible. (Id. at 4.) In deciding the motion court properly denied the claim regarding Petitioner's trial counsel's alleged failure to call Meanus as a witness at trial, the appellate court

found "[t]he record does not indicate that Meanus would have aided [Petitioner's] defense, or even could have been located."  (Id.)

Petitioner then filed this habeas action presenting three grounds for relief.  For ground one, Petitioner claims his trial attorney provided ineffective assistance in violation of the Sixth Amendment in that his attorney failed to spend enough time with him to discuss the case before trial, failed to interview Meanus, and failed to allow Petitioner to testify despite his desire to do so.  (Pet. at 5-6 [Doc. 2].)  For his second ground, Petitioner claims the prosecutor deprived him of a fair trial in violation of the due process and equal protection clauses of the Fourteenth Amendment in that, in the prosecutor's rebuttal closing argument, the prosecutor "referred to the defense counsel's closing argument as a lie and Nazi propaganda" and referred to defense argument or evidence that Boyd, rather than Petitioner, committed the robbery as lies.  (Id. at 6-7.)  For his third ground, Petitioner alleges his conviction violates his right to due process in that it is not based on sufficient evidence because White's description of the second robber did not match Petitioner, and her in-court and out-of-court identifications of Petitioner were unreliable.  (Id. at 7-8.)  The out-of-court identifications were unreliable, Petitioner alleges, because before the robbery White had been drinking alcohol for several hours  while "taking the prescription anti-depressant Prozac," and it was nighttime when she was robbed; and she selected Petitioner at the physical line-up only because she had recently seen his picture in a photo array.  (Id. at 8.)  Those unreliable out-of-court identifications, Petitioner urges, then tainted White's subsequent in-court identification of Petitioner.  (Id.)  Respondent counters that these claims are either meritless or,

16

for the ineffective assistance of counsel claim based on counsel's alleged failure to spend time prior to trial discussing the case with Petitioner, procedurally barred.

Ineffective Assistance of Counsel. For his first ground for relief, Petitioner urges his trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment in that his attorney failed to spend enough time with him to discuss the case before trial; failed to interview Meanus; and failed to allow Petitioner to testify despite his desire to do so. (Pet. at 5-6.)

Respondent counters that the first argument in support of this ground for relief is procedurally barred because Petitioner did not present it to the state courts; and that the last two arguments in support of this ground for relief should be denied as those claims were reasonably and correctly denied by the state court.

Ineffective Assistance of Counsel - Insufficient Time Spent with Petitioner Prior to Trial. Although Petitioner presented this claim in his pro se post-conviction motion (Resp't Ex. G at 13), he did not present it in his amended post-conviction motion (id. at 23-40) or in his post-conviction appeal (Resp't Ex. I).

It is well established that "[t]o be eligible for federal habeas corpus relief, a state prisoner must first exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court." **Carney v. Fabian**, 487 F.3d 1094, 1096 (8th Cir.) (internal quotation marks omitted) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006), cert.denied, 549 U.S. 1134 (2007)), cert. denied, 128 S.Ct. 721 (2007). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted.'" **Id.** (quoting Barrett v.

Acevedo, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)); accord **Clay v. Norris**, 485 F.3d 1037, 1039 (8th Cir. 2007); **Malone v. Vasquez**, 138 F.3d 711, 716 (8th Cir. 1998). While Petitioner presented this claim in his pro se post-conviction motion, the claim was not presented in his amended post-conviction motion and was, therefore, no longer available for consideration by the state courts. See **Tinsley v. State**, 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only claim which the motion court could have considered and determined was that raised in the amended Rule 29.15 motion for post-conviction relief [because t]he filing of an amended motion superseded [the] pro se motion and rendered it a nullity" (citations omitted)); **Day v. State**, 143 S.W.3d 690, 693 (Mo. Ct. App. 2004) ("The amended motion supersedes [the] pro se motion and renders it a nullity. . . . Therefore, the allegations of a timely-filed amended motion would be the only matters before the motion court" (citation omitted)); **Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (a pro se allegation not included in the amended motion for post-conviction relief is "not properly before the motion court"). The motion court did not address this issue (Resp't Ex. G at 62-71) and Petitioner did not include this claim in his post-conviction appeal (Resp't Ex. I). Habeas claims not presented in the Rule 29.15 motion or included in the post-conviction appeal are procedurally defaulted. **Interiano v. Dormire**, 471 F.3d 854 (8th Cir. 2006) (habeas claims for ineffective communication with attorney, among others, which were presented in the petitioner's pro se motion but were not in petitioner's amended motion for post-conviction relief, were not addressed by the motion court, and were not presented in the post-conviction appeal, were procedurally defaulted).

Because Petitioner's claim is defaulted, the state courts are not available for consideration of this claim. **Clay**, 485 F.3d at 1039. If the state courts are closed to Petitioner, the defaulted claims may not be reached by a federal habeas court "unless he can meet strict cause and prejudice or actual innocence standards." **Collier v. Norris**, 485 F.3d 415, 425 (8th Cir. 2007) (internal quotation marks omitted) (quoting <u>Clemons v. Luebbers</u>, 381 F.3d 744, 750 (8th Cir. 2004)); <u>accord</u> **Interiano**, 471 F.3d at 856; **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006).

"'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir.) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)), <u>cert. denied</u>, 128 S.Ct. 672 (2007). There is no "'exhaustive catalog of [the] objective impediments,'" nor have "the precise contours of the cause requirement been clearly defined." **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999) (quoting <u>Murray</u>, 477 U.S. at 488). "At a minimum, however, [Petitioner] must show that 'something *external* to [him], something that cannot fairly be attributed to him,' caused the procedural default." **Id.** (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991)) (second alteration in original).

Petitioner has not provided any cause for this procedural default. There being no cause for the default, the question of prejudice need not be reached. <u>See</u> **Schawitsch v. Burt**, 491 F.3d 798, 804 (8th Cir. 2007) (finding no cause to excuse a procedural default and not addressing the prejudice element before affirming the denial of a habeas claim of ineffective assistance of

counsel on the grounds it was procedurally defaulted and there was no showing of cause to excuse the default).

This Court may still reach the merits of this claim if Petitioner shows actual innocence. **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007). To make the necessary showing of such innocence sufficient to excuse a procedural default, Petitioner must come forward with new evidence and then "show that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "Evidence is only 'new' if it was 'not available at trial and could not have been discovered earlier through the exercise of due diligence.'" **Id.** (quoting Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001)). When a petitioner does not present such new evidence, then the habeas court cannot consider the merits of the procedurally barred claim. **Id.**

Petitioner has not made this showing.[10]

---

[10] To the extent the Court should consider Meanus' testimony as new evidence demonstrating Petitioner's actual innocence, her testimony is cumulative of other evidence presented at trial indicating that Boyd, rather than Petitioner, was with Anderson during the robbery. In relevant part, the jury had before it the tape recording of the conversation purported to be between Nakia and Boyd, and the testimony of Anderson that Boyd, and not Petitioner, was with Anderson at the time of the robbery. The jury also had before it, however, Boyd's testimony that he was not present during the robbery, as well as the testimony of White that Boyd was not the second person at the robbery. In light of the evidence introduced during trial, the addition of Meanus' testimony would not make it more likely than not that no reasonable juror would have convicted Petitioner.

Accordingly, Petitioner's claim that his trial counsel provided ineffective assistance by not spending sufficient time with Petitioner discussing the case prior to trial is procedurally barred.

Ineffective Assistance of Counsel - Failing to Allow Petitioner to Testify and Failing to Interview Meanus. Respondent does not contend these claims are procedurally barred because they were presented in Petitioner's post-conviction appeal. (Resp't Ex. I at 19, 20.) Therefore, the Court will address the merits of these claims.

Standard of Review. Title 28 U.S.C. § 2254 mandates that a federal court grant habeas relief on a claim adjudicated by the state courts on the merits

> only if the adjudication by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts," which factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence.

**Kenley v. Bowersox**, 275 F.3d 709, 711-12 (8th Cir. 2002) (quoting § 2254(d) and 2254(e)(1)); accord **Evans v. Rogerson**, 223 F.3d 869, 871 (8th Cir. 2000). A state appellate court's decision "will be 'contrary to' clearly established federal law if the controlling Supreme Court cases require a 'different outcome' or a 'particular result.'" **Mark v. Ault**, 498 F.3d 775, 784 (8th Cir. 2007) (citing Long v. Humphrey, 184 F.3d 758, 760 (8th Cir. 1999)). The decision will be an "unreasonable application" if it "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" **Id.** at 786 (quoting Collier, 485 F.3d at 421) (alteration in original). This standard requires

that the state court's application be "objectively unreasonable." **Id.** "It is not enough for the federal habeas court to conclude that, in its independent judgment, it would have applied federal law differently from the state court . . . ." **Id.** State court decisions are to be given "'the benefit of the doubt.'" **Id.** (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (per curiam)). And, "'[t]o the extent that inferior federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness . . . of the state court's treatment of the contested issue.'" **Copeland v. Washington**, 232 F.3d 969, 974 (8th Cir. 2000) (quoting Long, 184 F.3d at 760-61) (alterations in original).

The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), cert. denied, 129 S.Ct. 1905 (2009), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004). The presumption of correctness of findings of fact applies to the factual determinations made by both the state trial court and the state appellate court. **Smulls**, 535 F.3d at 864.

Additionally, "the 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc); **Weaver v. Bowersox**, 438 F.3d 832, 839 (8th Cir. 2006) (quoting Brown, 371 F.3d at 462), cert. dismissed sub nom. Roper v. Weaver, 550 U.S. 598 (2007); **James v. Bowersox**, 187 F.3d 866, 869 (8th Cir. 1999). A state court's summary

decision is presumed to be on the merits for purposes of habeas review.  **Carter v. Bowersox**, 265 F.3d 705, 712 (8th Cir. 2001).

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel.  **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)), cert. denied, 129 S.Ct. 754 (2008).  "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second that counsel's errors prejudiced the defense."  **Id.** (citations omitted) (citing Strickland, 466 U.S. at 687));  **Kellogg v. Skon**, 176 F.3d 447, 452 (8th Cir. 1999).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687.  More specifically, a petitioner must demonstrate that "trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney."  **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-94.)  "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment."  **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)).  The court is highly deferential in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'"  **Armstrong**, 534 F.3d at 863 (quoting

Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006), cert. denied, 549 U.S 1134 (2007)). To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" **Id.** at 866 (quoting Strickland, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" **Id.** (quoting Strickland, 466 U.S. at 694); accord **Carroll v. Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting Strickland, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

With respect to the claim that Petitioner's trial counsel failed to interview Meanus, the state appellate court found "[t]he record does not indicate that Meanus would have aided [Petitioner's] defense, or even could have been located."[11] (Resp't Ex. K, Mem. at 4.)

---

[11]  The motion court had found that Petitioner's trial attorney

testified that he may have spoken with Ms. Meanus at the beginning of the case, but his recollection was not clear. He did not aggressively pursue her whereabouts because she made a statement to the police that a person nicknamed 'E' borrowed her car [prior to the robbery]. 'E' seemingly could have been the [Petitioner] in this case, and definitely did not refer to . . . Boyd.

(Resp't Ex. G at 65.) The motion court further found that "[Meanus] moved prior to the trial [and

"[F]ailing to interview witnesses . . . may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel. Such a failure is not, however, a conclusive indication of ineffective assistance of counsel." **Kramer v. Kemna**, 21 F.3d 305, 309 (8th Cir. 1994) (citation omitted) (addressing the propriety of a certificate of probable cause for appeal in a habeas case). Even if Petitioner's trial counsel did not interview Meanus prior to trial, Petitioner must show "that, but for counsel's failure to interview . . . the witness[] in question, there is a reasonable probability that the result of his trial would have been different." **Id.** More specifically, "[t]o prove prejudice from a trial attorney's failure to investigate potential witnesses, a petitioner must show that the uncalled witnesses would have testified at trial and that their testimony would have probably changed the outcome of the trial." **Stewart v. Nix**, 31 F.3d 742, 744 (8th Cir. 1994); accord **Hadley v. Groose**, 97 F.3d 1131, 1135 (8th Cir. 1996). In evaluating the probability of a different result, the habeas court must "consider the totality of the evidence." **Siers v. Weber**, 259 F.3d 969, 974 (8th Cir. 2001).

While Petitioner showed Meanus would have testified at trial, (Resp't Ex. G at 65), he has not demonstrated that her testimony would have probably changed the outcome of trial. Her

---

stated] on redirect examination . . . that 'E' was [Petitioner]." (Id. at 66.) The motion court concluded that trial counsel's "failure to pursue the testimony of . . . Meanus was . . . objectively reasonable" in that her testimony could have harmed the defense based on her statement to the police, including the reference to "E," who is Petitioner, borrowing her car the night of the robbery; and counsel's "failure to further investigate Meanus' potential testimony was reasonable in light of the known impeaching evidence and the fact that other, stronger, evidence of the complicity of . . . Boyd in the crime was available (i.e., the tape recording and . . . Anderson's testimony)." (Id. at 69-70.) The motion court also found that Meanus' testimony concerning "Boyd's presence in her car prior to the offense [wa]s not credible" (id. at 66) and the record lacked evidence of her location prior to the trial (id. at 70.)

testimony regarding Boyd's presence with Anderson in her car the night of the robbery would have been cumulative of the evidence Petitioner presented during trial through the testimony of Anderson and the tape recording. Moreover, as the motion court found, her testimony would have been subject to challenge due to her relationship with Anderson[12] (Resp. Ex. G at 66) and due to her statement to the police which made a reference to giving her car to Anderson and Petitioner, through the reference to "E," and did not mention Boyd (id. at 65, 66). Her testimony also would be contradicted by the testimony of Boyd and White that Boyd was not present during the robbery. Therefore, there is no reasonable probability that the outcome of Petitioner's trial would have been different if trial counsel had interviewed Meanus prior to trial.

Petitioner has not established any prejudice resulting from any failure by his trial counsel to interview Meanus. The state court's decision regarding Meanus is not contrary to, or an unreasonable application of, clearly established federal law; nor an unreasonable determination of the facts in light of the evidence. The ineffective assistance of counsel claim based on trial counsel's failure to interview Meanus is denied.

Petitioner next claims his trial counsel was ineffective in failing to allow Petitioner to testify at trial. "A criminal defendant has a constitutional right to testify on [his] behalf. Only the defendant may waive [his] right to testify, and the waiver must be made voluntarily and knowingly." **Berkovitz v. Minnesota**, 505 F.3d 827, 828 (8th Cir. 2007) (citation omitted), cert.

---

[12] The motion court mistakenly identified "Emanuel Boyd" as the person with whom Meanus had an ongoing relationship. (Resp't Ex. G at 66). There is no reference to such a person in the record. Anderson's first name is Emanuel; and Boyd's first name is Kennon. Meanus testified that Anderson is her "baby['s] daddy" and they were living together in March 2000. (Resp't Ex. H.) This Court understands that motion court reference to be to Emanuel Anderson.

denied, 128 S.Ct. 1454 (2008). There is no rule requiring that the waiver of the right to testify be on the record. **Id.** An alleged failure of counsel to allow a petitioner to testify at his criminal trial is an ineffective assistance of counsel claim evaluated under **Strickland,** supra. **Winfield v. Roper**, 460 F.3d 1026, 1035 n. 3 (8th Cir. 2006), cert.denied, 550 U.S. 939 (2007). The state appellate court found the motion court was free to find, as it did, that Petitioner's testimony regarding his desire to testify "was not credible" and Petitioner's counsel's testimony, regarding his discussions with clients about their right to testify and their ability to make that decision, was credible. (Resp't Ex. K Mem. at 4.) The appellate court then deferred to the motion court's credibility determination and found no error in the motion court's conclusion that "counsel did not deprive [Petitioner] of his right to testify." (Id.)

The state court's credibility determinations are not "objectively unreasonable based on the record." **Smulls**, 535 F.3d at 864. This Court cannot substitute its judgment as to the credibility of the witnesses for the judgment of the state court which has observed the witnesses' demeanor. **Marshall v. Lonberger**, 459 U.S. 422, 434 (1983) (a federal habeas court has "no license to redetermine the credibility of witnesses whose demeanor has been observed by the state . . . court"); **Perry v. Kemna**, 356 F.3d 880, 885 (8th Cir. 2004); accord **Winfield**, 460 F.3d at 1035.


Petitioner has not shown that his trial counsel's failure to present Petitioner as a witness at trial constituted deficient performance. The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law; and the state court's decision was not based on an unreasonable determination of the facts in light of the evidence. The ineffective

assistance of counsel claim based on trial counsel's failure to present Petitioner's testimony at trial is denied.

Prosecutor's Improper Closing Argument. For his second ground, Petitioner argues the prosecutor improperly made a reference during his rebuttal closing "to the defense counsel's closing argument as a lie and Nazi propaganda," and improperly argued that the tape recording was "mad[e] up" and should not be trusted by the jury, in violation of his rights to a fair trial, due process, and equal protection. Respondent does not argue this claim is procedurally barred. Petitioner presented this issue on direct appeal and the state court issued a brief order affirming the trial court. (Resp't Ex. F.) This summary disposition is a decision on the merits of this claim for purposes of habeas review. **Carter**, 265 F.3d at 712. The Court will consider the claim on its merits.

When a habeas court is reviewing an allegation that a prosecutor made improper comments during closing argument, "[t]he relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" **Darden v. Wainwright**, 477 U.S. 168, 180 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)); **Barnett v. Roper**, 541 F.3d 804, 812 (8th Cir. 2008). A court may grant habeas relief only if the prosecutor's "'closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial.'" **Barnett**, 541 F.3d at 813 (quoting Weaver, 438 F.3d at 840). To obtain habeas relief, the petitioner must show "a reasonable probability that the outcome would have been different but for the improper statement." **Id.** In analyzing such a claim, the habeas court considers "the weight of the evidence and whether

the improper argument misstated evidence or implicated other specific rights of the defendant[]."
 **Bucklew v. Luebbers**, 436 F.3d 1010, 1022 (8th Cir. 2006).

Here, the challenged rebuttal closing argument by the prosecutor insinuating the tape recording was "manufactured" and referring to "propaganda" and "Germany" did not so infect the trial with unfairness as to make Petitioner's resulting conviction a denial of due process. <u>See</u> **Darden**, 477 U.S. at 180.  The challenged reference to Germany was made once, was objected to by Petitioner's counsel, was promptly addressed by the trial court, and was not repeated in any fashion by the prosecutor.  The prosecutor's discussion of the tape recording was brief.  Additionally, the trial court instructed the jurors that the arguments of counsel were not evidence. (Resp't Ex. A at 48.)  While the reference to Germany was inappropriate, the challenged argument of the prosecutor did not implicate any of Petitioner's specific rights and did not misstate the evidence.  <u>See</u> **Bucklew**, 46 F.3d at 1022.  The other evidence introduced at trial, including White's testimony describing the robbery, the identification of the license plate number of the vehicle involved in the robbery, and the identification of the men involved in the robbery; Officer Buck's testimony regarding the discovery of the vehicle later the day of the robbery; and the testimony of Detective Holmes regarding the recovery of White's glasses inside that vehicle and regarding White's identification of Petitioner through a photo array and lineup within a few weeks of the robbery, is more than sufficient to support Petitioner's conviction.  Moreover, in light of Boyd's and Nakia's contradicting trial testimony about what was on the recording, it is not clear that the tape recording itself would be significant to the deliberations of a reasonable juror.  Under the circumstances, the prosecutor's closing argument was not "so inflammatory and so outrageous

that any reasonable trial judge would have <u>sua</u> <u>sponte</u> declared a mistrial," and Petitioner has not shown a reasonable probability that the outcome of the trial would have been different but for the challenged argument of the prosecutor.  <u>See</u> **Barnett**, 541 F.3d at 813.

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law; and the state court's decision was not based on an unreasonable determination of the facts in light of the evidence.  The claim that certain portions of the prosecutor's rebuttal closing violated Petitioner's constitutional rights is denied.

<u>Insufficient Evidence to Support Conviction.</u>  For his third ground, Petitioner alleges his conviction violates his right to due process in that it is not based on sufficient evidence because White's description of the second robber did not match Petitioner, and her in-court and out-of-court identifications of Petitioner were unreliable.  Respondent does not argue this claim is procedurally barred.[13]  A sufficiency of the evidence claim was presented on direct appeal, which

_____

[13] Petitioner mentions "unlawful arrest" in setting forth the facts supporting this ground for relief.  (Pet. at 8 [Doc 2].)  Respondent urges this aspect of the insufficiency of the evidence claim has not been presented to the state courts because it was not presented on direct appeal.  A review of Petitioner's brief on direct appeal reveals no mention of his illegal arrest.  (Resp't Ex. D.)  When a petitioner fails to include a specific claim in the direct appeal, it is procedurally barred from federal habeas review.  **Osborne**, 411 F.3d at 919.

Petitioner did mention in his <u>pro se</u> post-conviction motion that "his conviction [was] obtained by use of evidence obtained pursuant to an unlawful arrest," (Resp't Ex. G at 12), but that claim was not in his amended motion for post-conviction relief (<u>id.</u> at 23-40).  Therefore, it was no longer available for consideration by the state courts.  <u>See</u> **Tinsley**, 258 S.W.3d at 927 ("the only claim which the motion court could have considered and determined was that raised in the amended Rule 29.15 motion for post-conviction relief [because t]he filing of an amended motion superseded [the] pro se motion and rendered it a nullity" (citations omitted)); **Day**, 143 S.W.3d at 693 ("The amended motion supersedes [the] <u>pro se</u> motion and renders it a nullity. . . . .  Therefore, the allegations of a timely-filed amended motion would be the only matters before the motion court" (citation omitted)); **Leach**, 14 S.W.3d at 670-71 (a <u>pro se</u> allegation not included in the amended motion for post-conviction relief

issued a summary order affirming the judgment of conviction. (Resp't Ex. F.) This summary disposition is a decision on the merits of this claim for purposes of habeas review. **Carter**, 265 F.3d at 712. The Court will consider this claim on its merits.

Due Process and the Sixth Amendment "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." **United States v. Gaudin**, 515 U.S. 506, 510 (1995); **Johns v. Bowersox**, 203 F.3d 538, 543 (8th Cir. 2000) (quoting Gaudin, 515 U.S. at 510). Therefore, a petitioner is entitled to habeas corpus relief under §2254 "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." **Jackson v. Virginia**, 443 U.S. 307, 324 (1979); **Nance v. Norris**, 392 F.3d 284, 289-90 (8th Cir. 2004) (quoting Jackson, 443 U.S. at 324)). The relevant question in analyzing such a claim is

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

---

is "not properly before the motion court"). Nor was this claim addressed by the motion court (Resp. Ex. G at 62-71) or raised by Petitioner on appeal (Resp't Ex. I). Therefore, any "illegal arrest" claim is procedurally defaulted. **Interiano**, 471 F.3d at 856.

Only a showing of cause and prejudice or actual innocence would allow this Court to consider the merits of such a claim. Petitioner has not provided the Court with any basis for finding cause to allow this Court to address the merits of this claim. **Collier**, 485 F.3d at 425; **Greer**, 493 F.3d at 957. There being no cause for the default, the question of prejudice need not be reached. See **Schawitsch**, 491 F.3d at 804. Additionally, Petitioner has not shown actual innocence to allow this Court's consideration of the merits of this claim. **Osborne**, 411 F.3d at 920. Accordingly, this claim is procedurally barred.

**Jackson**, 443 U.S. at 319 (citation omitted); **Skillicorn v. Luebbers**, 475 F.3d 965, 977 (8th Cir.) (quoting Jackson, 443 U.S. at 319), cert. denied, 128 S.Ct. 297 (2007) . The scope of habeas review of such a claim is "extremely limited." **Skillicorn**, 475 F.3d at 977. "The court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and . . . must defer to that resolution." **Whitehead v. Dormire**, 340 F.3d 532, 536 (8th Cir. 2003) (quotation marks omitted) (quoting Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002)). Additionally, the federal habeas court may not make its own determination of witness credibility, for that determination is for the state court trier of fact. **Robinson v. LaFleur**, 225 F.3d 950, 954 (8th Cir. 2000). Eyewitness testimony to the crime charged may be sufficient to satisfy due process, due to the assumption the jury believes the witness' story. See **Tibbs v. Florida**, 457 U.S. 31, 45 n. 21 (1982) (noting that, "[i]f the jury believed the [eyewitness' testimony], the State's presentation was more than sufficient to satisfy due process"); **Loeblein v. Dormire**, 229 F.3d 724, 726 (8th Cir. 2000) ("A victim's testimony is, by itself, normally sufficient to sustain a conviction").

Petitioner was charged with first degree robbery in violation of Missouri Revised Statutes § 569.020, for acting with Anderson to forcibly steal property from White through the display and threatened use of what appeared to be a deadly weapon. (Resp't Ex. A at 18-19.) Missouri Revised Statutes § 569.020.1(4) states that a person commits the crime of robbery in the first degree when he forcibly steals property during the course of which he or another participant "[d]isplays or threatens the use of what appears to be a deadly weapon." White testified that, during the robbery, Anderson placed what she thought was a gun to her back, took money from

her back pocket, and ran away, while Petitioner took her purse from her vehicle and ran away. (Resp't Ex. B at 193-94, 196, 204, 242-44, 246.) White also identified the license plate number of the vehicle used by the robbers to leave the scene, and described the two men who committed the robbery, later identifying Petitioner in a photo array and lineup. (Id. at 198-200, 205-07, 215-18, 222-26, 235-36, 238, 251, 260.) This eyewitness testimony was constitutionally sufficient to support Petitioner's conviction.

Petitioner urges White's eyewitness information about the robbery was unreliable because she had been drinking alcohol while taking Prozac before the robbery; it was nighttime and dark during the robbery; she "lack[ed the] opportunity to view the suspect" and lost eyeglasses at the time of the offense. (Pet. at 8 [Doc. 2].) Petitioner also contends he does not believe White identified him and, if she did, it is only because she saw his picture before the lineup where she identified Petitioner. (Id.) These arguments, "while appropriately made to a jury, are unconvincing here." **Nance**, 392 F.3d at 290. A jury is "not required to credit . . . testimony [supporting a petitioner's version of events] when other evidence support[s] the state's case." **Whitehead**, 340 F.3d at 537. More importantly, this Court may not make credibility determinations and must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state. **Id.** at 536; **Robinson**, 225 F.3d at 954.

The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law; and the state court's decision was not based on an unreasonable determination of the facts in light of the evidence. The claim that his conviction violates his right to due process in that it is not based on sufficient evidence is denied.

## Conclusion

For the foregoing reasons, Petitioner's three § 2254 claims are either procedurally barred or without merit.

Accordingly,

**IT IS HEREBY ORDERED** that the 28 U.S.C. § 2254 petition of Ernest Williams  is **DENIED** without further proceedings.

An appropriate Judgment shall accompany this Memorandum and Order.


 /s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE


Dated this 19th  day of August, 2009.